Filed 9/12/25  P. v. Pizzini CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G063940 |
| v. | (Super. Ct. No. M-20717) |
| JOHN EDWARD PIZZINI, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from an order of the Superior Court of Orange County, Claudia C. Alvarez, Judge. Reversed and remanded with directions.

James R. Bostwick, Jr., under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Steve Oetting and Paige B. Hazard, Deputy Attorneys General, for Plaintiff and Respondent.

John Edward Pizzini appeals from the trial court's order denying his petition to terminate his sex offender registration under Penal Code section 290.5, subdivision (a) (all undesignated statutory references are to this code). We conclude the trial court abused its discretion by improperly placing the burden on Pizzini to prove community safety would not be significantly enhanced by requiring continued registration. Thus, we reverse the order and remand to the trial court for it to reconsider whether Pizzini's petition should be granted.

FACTUAL AND PROCEDURAL HISTORY

In 1990, Pizzini was charged with four felony counts of violating section 288, subdivision (c), which alleged, between April and May 1990, Pizzini committed a lewd and lascivious act upon the victim, who was 14 or 15 years old, and Pizzini was at least 10 years older than the child. Pizzini also was charged with four misdemeanor counts of violating section 647.6, which alleged, between April and May 1990, he annoyed and molested a child under 18 years old. In 1990, Pizzini pleaded guilty to at least one misdemeanor count of violating section 647.6.[1]

As a result of Pizzini's conviction in 1990, he was required to register as a sex offender, and in August 2023, Pizzini filed a petition to terminate his registration pursuant to section 290.5. After the filing of

---

[1] The only court document in the record on appeal from Pizzini's 1990 case is the first amended information. On appeal, Pizzini says he pleaded guilty to one misdemeanor count under section 647.6, and in its opposition in the trial court, the prosecution said he pleaded guilty to one count under section 647.6 and the remaining counts were dismissed. However, on appeal, the Attorney General says Pizzini pleaded guilty to four counts. We need not resolve this issue given our conclusion on this appeal the trial court abused its discretion and the matter should be remanded.

Pizzini's petition, the Costa Mesa Police Department filed a "PETITION CHECKLIST." The checklist noted Pizzini had four misdemeanor convictions for failure to register (two in 1994, one in 1995, and one in 2016). The checklist also indicated Pizzini had a 1981 misdemeanor conviction in Michigan for indecent exposure. The checklist noted Pizzini's minimum registration period had been extended by 4 years (for the four misdemeanor failure-to-register convictions) and tolled by 10 years, 4 months, and 3 days (for subsequent incarceration, placement, or commitment, including any subsequent civil commitment, but that time did not include arrests not resulting in conviction, adjudication, or revocation of probation or parole). The checklist determined the minimum time period for Pizzini's registration requirement to be 24 years, 4 months, and 3 days. Thus, the checklist indicated Pizzini was eligible to have his registration requirement terminated.

In January 2024, the prosecution objected to Pizzini's petition, asserting community safety would be significantly enhanced by Pizzini's continued registration. In support of its opposition brief, the prosecution submitted: (1) the first amended information against Pizzini in his 1990 case; (2) a 1990 police report regarding the 1990 case; (3) a police department case file regarding the 1981 Michigan conviction; and (4) a newspaper article from December 1990.

In its opposition brief, the prosecution argued "[t]he facts of the underlying case evidence that community safety would be significantly enhanced by [Pizzini's] continued registration." The police report indicated the aunt of the victim reported her 14-year-old niece "was possibly having sexual relations with [a] [29-year-old] male," Pizzini. The police report also indicated individuals had conveyed, inter alia, the following: Pizzini ran a

candy sales business and hired minors to sell candy; the victim, her sister, and other minors worked for Pizzini; Pizzini had been seen kissing the victim on the lips many times; when Pizzini was driving, he allowed female minors to sit on his lap and steer; one person reported while sitting on Pizzini's lap he put his hand on her thigh and began to move it towards her vaginal area and she pushed his hand away; another person reported, on more than one occasion while sitting on Pizzini's lap, he put his hand on her thigh and stomach and she hit him to stop touching her; Pizzini said to one of his employees he liked girls between the ages of 13 and 18; and Pizzini hosted a slumber party at his home one night with girls who worked for him, Pizzini and the victim slept in the same bedroom and were seen through the window in bed together, and the next day the victim said she had been drunk and did not remember if anything had happened.

The police report also noted, after receiving information the victim was pregnant, Pizzini and the victim were found together by police and Pizzini told the victim not to go with the police and that she did not have to say anything. The police report further indicated the victim had said she and Pizzini began seriously dating in April 1990 and began having intercourse almost immediately after becoming serious, and when she told Pizzini she was pregnant, he became angry because she had lied about being on birth control pills. The police report recounted the victim had also said, when her father learned of the pregnancy, he told Pizzini that Pizzini could either marry the victim, leave the state, or go to jail, and Pizzini said he would marry the victim.

Additionally, the prosecution argued Pizzini's 1981 Michigan conviction supported the need for continued registration. The prosecution

4

asserted, in 1981, Pizzini was found in his vehicle "naked from the waist down, staring at the sky[,] and stroking his penis."

The prosecution also contended Pizzini's conduct since the registration requirement supports the need for continued registration. The prosecution argued Pizzini had been convicted of failing to register six times, with the most recent failure being in 2015. The prosecution asserted Pizzini had a voluminous non-sexual criminal history that included "21 different convictions on a variety of cases."[2] The prosecution also said Pizzini, in 1990 after his conviction, "was reported to be still operating his candy sales business and still employing minors." The prosecution asserted law enforcement was contacted, and Pizzini "apparently seemed undeterred from contact with children despite his [1990] conviction, registration requirements, and conditions of probation." The prosecution appears to have relied on a 1990 newspaper article for these assertions. The newspaper article noted Pizzini had been arrested on suspicion of violating his probation and, at the time of his arrest, he was alone with a 14-year-old girl. The article reported Pizzini said he had resumed his candy selling business and planned to ask his probation officer for permission in the near future. The article claimed Pizzini's probation required him to stay away from minors. The article

---

[2] The prosecution asserted these convictions "vary from multiple convictions of felony second degree burglary under [sections 459 to 460, subdivision (b)] to illegal ownership of a firearm under [former section 12021, subdivision (a)(1)]—a charge which he was sentenced to 2 years of state prison for in 08NF1128." The prosecution further claimed Pizzini had "been convicted of various misdemeanor forms of theft and notably, contempt of court" and when Pizzini had "been subject to parole, it appears he violated parole multiple times." Based on the record on appeal, the prosecution did not file supporting documents regarding these purported other convictions.

further indicated the 14-year-old girl who was the subject of the charges in Pizzini's prior case had run away the day before she was to testify in Pizzini's trial, and was now living in Mexico. The article noted Pizzini said he had been in a relationship with that 14-year-old girl and, after she became pregnant, they had planned to marry.

In March 2024, the trial court held a hearing as to Pizzini's petition to terminate his registration. The court denied the petition and ruled Pizzini could file a new petition in three years. Prior to denying the petition, the court orally provided its tentative. The court noted it had reviewed the materials submitted and analyzed each of the factors under section 290.5, subdivision (a)(3). The court said it was notable Pizzini was 29 years old and the victim was 14 years old, and although he seemed to be running a legitimate candy business, it gave him access to children. The court also said it found noteworthy in the police report "there were other allegations of similar conduct with other children, maybe not to the extent of full blown intercourse with other children, but definitely at least attempted sexual contact with minors of that same age." The court stated the victim had fled to Mexico and it was reported to law enforcement the victim was pregnant. The court said the victim was "maybe not a full blown stranger" but "came in contact with [Pizzini] because of that attraction of the candy business so that's concerning, but not a stranger." The court also stated there was one victim in this case, but "there were other kids where there's questionable behavior."

The trial court further said "[t]he other concern is that after [Pizzini] had been placed on probation and had been, specifically told to register, and specifically told to stay away from minor children, with a specific condition to not be alone with children. Soon thereafter, within

6

months of that conviction, and after having served some time in custody, he was, in fact, found with a 14 year old alone and this was a runaway child and it was not the same original victim." The court noted Pizzini had engaged in this conduct without first asking for permission from the probation officer.

The trial court stated Pizzini "on six different occasions failed to register, the most recent one being in 2015, having risen to a felony level because of his repeated failure to register." The court said that was "extremely and probably the biggest red flag that the [c]ourt is taking into consideration, because it tells the [c]ourt that not only has he not taken the [section] 290 registration requirements seriously, but he will continue to not take the gravity of his conduct as—in consideration before he engages in further contact with children." The court added it was making its decision on all of the evidence but the six convictions for failing to register, with the last one being a felony, were a "major factor."

The trial court also said Pizzini had "several probation violations, at least one parole violation," had "served time in custody," and had "been convicted for felonies involving moral turpitude and has been convicted of contempt of court." The court stated "Pizzini at this time has not convinced the [c]ourt he would continue to be a law abiding citizen." The court noted it believed the most recent conviction was in 2015. However, the court said "given the repeated conduct before that, the [c]ourt is not yet convinced that, in fact, he will not pose a danger to society if the [c]ourt were to lift the restriction on having to register as a [section] 290 registrant as required in the original conviction." The court further indicated it would permit Pizzini to file a new petition in three years as that "will give at least ten years of actual noncriminal conduct and maybe an opportunity to complete a program."

Additionally, the trial court stated there was no evidence Pizzini had completed a program, and although it could not require Pizzini to complete a program, it thought "that would be convincing to the next judicial officer, or this one if [the trial judge is] here doing this case, that, in fact, he has at least tried to address the propensities he might still have with him." The court further said the "other concerning thing" was there was "no [State-Authorized Risk Assessment Tool for Sex Offenders (SARATSO)] report so the [c]ourt doesn't have any documentation whatsoever to indicate and convince this [c]ourt that [Pizzini] doesn't continue to pose a grave danger to the community with this type of conduct. So we do believe—I do believe that the [c]ourt not lifting that requirement will enhance public safety."

In response to the tentative, Pizzini's counsel argued the failures to register do not prove Pizzini was likely to reoffend, and the conviction requiring his registration was 34 years earlier. Pizzini's counsel further asserted, while Pizzini continued with the candy business after his release, it appears he was not found in violation of probation and not continuing with the candy shop was then added as a condition of his probation. Pizzini's counsel underscored there has been no criminal offense of a sexual nature since 1990, and Pizzini's other convictions do not indicate a likelihood to commit a sexual offense again. Pizzini's counsel noted there was no court ordered therapy and no SARATSO score, but it was the prosecution's burden. Pizzini's counsel said the other offenses show Pizzini does not "know how to follow the law," but argued there have been no offenses since 1990 of a sexual nature.

The prosecution argued the trial court's tentative was correct. The prosecution underscored Pizzini had a 1981 Michigan conviction, was convicted in his 1990 case, and then continued to operate his candy selling

business and employ minors. The prosecution noted it was "[f]air enough to say" Pizzini was never charged for operating the candy selling business after his conviction in 1990. However, the prosecution highlighted Pizzini violated his registration requirements six times and had more than 20 convictions since the first date of registration. The court asked the prosecution about Pizzini's counsel's argument it was the prosecution's burden to prove Pizzini is likely to reoffend, to which the prosecution underscored Pizzini's history, including failing to register.

The trial court ultimately stated it had looked at the totality of the circumstances and will keep its tentative and deny the petition. The court noted Pizzini was only convicted "for several of all the charges that were actually posed before him at the beginning of that case" but the court "cannot ignore the fact that the victim wasn't available to testify and, in fact, ran away from Orangewood and took off to Mexico." The court also said it seemed Pizzini had "trivialized everything that came down, and still making statements that he was going to marry the girl and that would make it all go away." It stated "he was found with a [14-year-old] runaway soon thereafter after being placed on probation." The court added, nine years after his 1981 Michigan conviction, Pizzini was "committing much graver offenses with children."

The trial court further stated it cannot require Pizzini to go to counseling but he is "welcome to do so and maybe that will be more convincing to the next judicial officer. And whether it's the People's burden or the [d]efense burden to present the [c]ourt with any evidence of his risk, I think would serve a judicial officer, whomever it is, well to at least have that information before taking away the restriction for him to register." The court found the "restriction does enhance the public safety as it relates to [Pizzini]

9

at this time regarding those issues." In its minute order, the court indicated it would allow Pizzini to file a new petition in three years to allow more time between the last failure-to-register conviction and other criminal activity and to "allow [Pizzini] time to complete sex offender program if he wishes and SARATSO report."

## DISCUSSION

Under section 290, a person convicted of certain sex crimes is required to register as a sex offender. (See *People v. Thai* (2023) 90 Cal.App.5th 427, 432 (*Thai*).) California law previously "took a one-size-fits-all approach to sex offender registration" such that registration was for life. (*People v. Franco* (2024) 99 Cal.App.5th 184, 190 (*Franco*).) However, "Commencing January 1, 2021, Senate Bill No. 384 (2017–2018 Reg. Sess.) . . . restructured the sex offender registration requirement, establishing three tiers of registration for sex offenders, primarily based on the offense of conviction, for periods of at least 10 years (tier one), at least 20 years (tier two), and life (tier three)." (*Thai*, at p. 432.) Pizzini is a tier one offender.

Section 290.5 provides certain procedures for tier one sex offenders to petition the trial court to terminate their registration requirement after the mandated minimum registration period. "If the defendant does not 'meet the statutory requirements' for removal or has not properly served or filed their petition, the trial court may summarily deny the petition after 'stat[ing] the reasons' for doing so." (*Franco, supra*, 99 Cal.App.5th at p. 191.) If the petition is not summarily denied and the prosecution does not request a hearing, "the trial court must grant the petition as long as the defendant is currently registered, has no pending charges, and is not in custody or on parole, probation or supervised release."

10

(*Id.* at pp. 191–192.) It is undisputed Pizzini is statutorily eligible to have his registration requirement terminated.[3]

However, in response to a petition, "The prosecution may request a hearing and present evidence to establish 'community safety would be significantly enhanced by requiring continued registration.'" (*Thai, supra*, 90 Cal.App.5th at p. 432.) As a panel of this court has explained, "the prosecution must produce evidence establishing that requiring continued registration appreciably increased society's safety." (*Ibid.*)

To make this determination, "the court shall consider" the following: "the nature and facts of the registerable offense; the age and number of victims; whether any victim was a stranger at the time of the offense (known to the offender for less than 24 hours); criminal and relevant noncriminal behavior before and after conviction for the registerable offense; the time period during which the person has not reoffended; successful completion, if any, of a Sex Offender Management Board-certified sex offender treatment program; and the person's current risk of sexual or violent reoffense, including the person's risk levels on SARATSO static, dynamic,

---

[3] A tier one offender is generally subject to a minimum registration requirement of 10 years. (§ 290, subd. (d)(1)(A).) Under section 290, subdivision (e), the minimum time period is "tolled during any period of subsequent incarceration, placement, or commitment, including any subsequent civil commitment, except that arrests not resulting in conviction, adjudication, or revocation of probation or parole shall not toll the required registration period," and it is "extended by one year for each misdemeanor conviction of failing to register." Thus, Pizzini's minimum registration requirement was increased from the initial 10 years, and the checklist from the Costa Mesa Police Department indicated his total minimum registration requirement was approximately 24 years. However, even with the increased minimum registration requirement, the parties do not dispute Pizzini has exceeded his adjusted minimum registration requirement.

11

and violence risk assessment instruments, if available." (§ 290.5, subd. (a)(3).) The statute further provides "[a]ny judicial determination made pursuant to this section may be heard and determined upon declarations, affidavits, police reports, or any other evidence submitted by the parties which is reliable, material, and relevant." (*Ibid.*) "If the court denies the petition, it must set the time period, one to five years, after which the petitioner can re-petition for termination and state its reasons." (*Thai, supra*, 90 Cal.App.5th at p. 433; see § 290.5, subd. (a)(4).)

We review "the trial court's ruling on a petition for termination from the sex offender registry for abuse of discretion." (*Thai, supra*, 90 Cal.App.5th at p. 433.) "To establish an abuse of discretion, a defendant must demonstrate the trial court's decision fell outside the bounds of reason, i.e., was arbitrary, capricious, or patently absurd." (*Ibid.*) "'The abuse of discretion standard is not a unified standard; the deference it calls for varies according to the aspect of a trial court's ruling under review. The trial court's findings of fact are reviewed for substantial evidence, its conclusions of law are reviewed de novo, and its application of the law to the facts is reversible only if arbitrary and capricious.' [Citation.] A trial court abuses its discretion when its factual findings are not supported by the evidence, or its decision is based on an incorrect legal standard." (*Ibid.*)

Here, the trial court abused its discretion because its comments indicate it improperly placed the burden on Pizzini to establish community safety would not be significantly enhanced by his continued registration, instead of placing the burden on the prosecution to establish community safety would be significantly enhanced by his continued registration. Notably, the court's comments indicate it weighed against Pizzini that there was no evidence of the completion of a Sex Offender Management Board-certified sex

12

offender treatment program or a SARATSO report.[4] While explaining its tentative, the court noted it could not require Pizzini to complete a program, but it thought "that would be convincing to the next judicial officer, or this one if [the trial judge is] here doing this case, that, in fact, he has at least tried to address the propensities he might still have with him." The court further stated the "other concerning thing" was there was "no SARATSO report so the [c]ourt doesn't have any documentation whatsoever to indicate and convince this [c]ourt that [Pizzini] doesn't continue to pose a grave danger to the community with this type of conduct. So we do believe—I do believe that the [c]ourt not lifting that requirement will enhance public safety."

The trial court's comments imply Pizzini needed to produce evidence he completed a Sex Offender Management Board-certified sex offender treatment program and evidence of a SARATSO report in order for the court to be convinced he did not pose a risk to community safety. However, this reverses the burden; it was the prosecution's burden to establish Pizzini was a current risk. (See *Thai, supra*, 90 Cal.App.5th at p. 434 ["it was the prosecution's burden to establish Thai was a current risk and it could have sought a current risk assessment"].) The lack of evidence as

---

[4] The trial court also made other comments during its tentative suggesting it was placing the burden on Pizzini. After discussing Pizzini's criminal history following his registerable offense, the court stated "Pizzini at this time has not convinced the [c]ourt he would continue to be a law abiding citizen." The court also said "given the repeated conduct before" his last conviction (which the court believed was 2015), "the [c]ourt is not yet convinced that, in fact, he will not pose a danger to society if the [c]ourt were to lift the restriction on having to register as a [section] 290 registrant as required in the original conviction." The court's comments suggest it was Pizzini's burden to convince the court he was not currently likely to reoffend.

13

to the completion of a Sex Offender Management Board-certified sex offender treatment program and a SARATSO report were at most neutral factors under the circumstances here.

The Attorney General does not dispute the lack of a SARATSO report should not weigh against Pizzini. However, the Attorney General argues, after Pizzini's "counsel clarified it was the prosecution's burden to provide a SARATSO report and prove his risk of reoffending . . . , the court did not weigh its absence in determining [Pizzini] poses a danger to the community and reasonably found evidence of risk could be helpful in a future hearing on terminating his sex offender registration requirement." We do not agree with the Attorney General's characterization of what the trial court found. The court's comments after providing its tentative and hearing argument did not clarify it was applying the correct burden and not weighing the absence of the SARATSO report against Pizzini. The court never stated after its tentative that it found the lack of a SARATSO report to be neutral and not, as the court had initially stated in its tentative, "concerning." Instead, the court subsequently noted, "whether it's the People's burden or the [d]efense burden to present the [c]ourt with any evidence of his risk, I think would serve a judicial officer, whomever it is, well to at least have that information before taking away the restriction for him to register." The court's comment suggests there needs to be evidence of a current risk assessment "before taking away the restriction for him to register." Moreover, the court's order after the hearing further supports the court viewed the lack of the SARATSO report as weighing against Pizzini because the court noted Pizzini could file a new petition in three years in part to allow him time to obtain a SARATSO report.

14

Regarding the "successful completion, if any, of a Sex Offender Management Board-certified sex offender treatment program" (§ 290.5, subd. (a)(3)), the Attorney General asserts the trial court "reasonably found the lack of program or therapy shows he has never tried to address his sexual misconduct and, therefore, presents a danger to public safety." We disagree the lack of evidence indicating Pizzini completed a Sex Offender Management Board-certified sex offender treatment program weighs against Pizzini here. Pizzini's registerable offense occurred more than 30 years ago, and while there was no evidence Pizzini completed a Sex Offender Management Board-certified sex offender treatment program, there also was no evidence such a program was offered to Pizzini. Again, the prosecution had the burden of establishing community safety would be significantly enhanced by continued registration, and on this record the lack of evidence as to this factor does not weigh against Pizzini.

Having determined the trial court abused its discretion for incorrectly applying the burden and under the circumstances of this case, we will remand the matter to the trial court for it to reconsider whether Pizzini's registration requirement should be terminated. Pizzini argues remand is not proper because it would give "a second bite of the apple" to the prosecution

15

and "would waste scarce judicial resources on a second hearing."[5] We disagree. This is not simply, as Pizzini says, "a second bite of the apple" given we have concluded the court erred by placing the burden on Pizzini. Given the evidence of certain other factors in this case, we will leave for the trial court in the first instance to exercise its discretion while applying the proper burden.[6]

---

[5] The only case Pizzini cites for this proposition is *Hernandez v. Superior Court* (2003) 112 Cal.App.4th 285, which is inapposite and in the portion cited by Pizzini discusses summary judgment procedure. (*Id.* at p. 299 ["'summary judgment procedure provides the court and parties with a vehicle to weed the judicial system of an unmeritorious case which otherwise would consume scarce judicial resources and burden the parties with the economic and emotional costs of protracted litigation because the lack of merit is not apparent from the face of the complaint or answer'"].)

Pizzini also says remand "would raise questions of fairness." Pizzini does not cite any caselaw that "fairness" would bar remand here where the trial court applied the wrong burden.

[6] On appeal, Pizzini has raised a number of additional arguments that he did not raise in the trial court. For example, in his reply brief on appeal, Pizzini argues the court should not have considered the newspaper article because it was unreliable. We need not address these arguments given our conclusion the matter should be remanded. On remand, the parties may introduce additional evidence and make additional arguments as to the evidence and whether Pizzini's registration requirement should be terminated.

## DISPOSITION

The order is reversed, and the matter is remanded to the trial court for further proceedings consistent with this opinion.


MOTOIKE, ACTING P. J.

WE CONCUR:


DELANEY, J.


GOODING, J.

17